STATE OF CONNECTICUT *v.* TINO NEGRON
(14145)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued November 7, 1991—decision released March 3, 1992

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John Smriga,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Tino Negron, was charged in an amended information with the crimes of murder, felony murder, attempted robbery and carrying a pistol without a permit. After a jury trial he was convicted of felony murder in violation of General Statutes § 53a-54c[1] and carrying a pistol without a permit

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a fire-

in violation of General Statutes §§ 29-35 and 29-37 (b).[2]
He was sentenced to a term of forty-five years imprison-

arm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] "[General Statutes] Sec. 29-35. CARRYING OF PISTOL OR REVOLVER WITH-OUT PERMIT PROHIBITED. EXCEPTIONS. (a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. The provisions of this subsection shall not apply to the carrying of any pistol or revolver by any sheriff, parole officer or peace officer of this state, or sheriff, parole officer or peace officer of any other state while engaged in the pursuit of his official duties, or federal marshal or federal law enforcement agent, or to any member of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, when on duty or going to or from duty, or to any member of any military organization when on parade or when going to or from any place of assembly, or to the transportation of pistols or revolvers as merchandise, or to any person carrying any pistol or revolver while contained in the package in which it was originally wrapped at the time of sale and while carrying the same from the place of sale to the purchaser's residence or place of business, or to any person removing his household goods or effects from one place to another, or to any person while carrying any such pistol or revolver from his place of residence or business to a place or person where or by whom such pistol or revolver is to be repaired or while returning to his place of residence or business after the same has been repaired, or to any person carrying a pistol or revolver in or through the state for the purpose of taking part in competitions or attending any meeting or exhibition of an organized collectors' group if such person is a bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any other state or subdivision of the United States, or to any person carrying a pistol or revolver to and from a testing range at the request of the issuing

ment on his felony murder conviction and to a consecutive term of five years on his conviction of carrying a pistol without a permit, for a total effective sentence of fifty years imprisonment. The defendant took a direct appeal from that judgment to this court pursuant to General Statutes § 51-199 (b).

The jury could reasonably have found, from the evidence produced at trial, that the defendant shot and killed Dwayne Hollyfield on December 23, 1988, at approximately 11:30 p.m., near the intersection of Stillman and Kossuth Streets in Bridgeport. The jury also could reasonably have found that the shooting occurred while the defendant was attempting to rob Hollyfield of a microwave oven, contained in a cardboard carton, that Hollyfield was transporting in a supermarket shopping cart.

The defendant does not dispute the sufficiency of the evidence to prove his guilt. He does, however, claim that he is entitled to a reversal of his conviction and a new trial because of certain rulings of the trial court and because of comments made by the prosecuting attorney in his closing argument. We affirm the judgment.

authority, or to any person carrying an antique pistol or revolver, as defined in section 29-33.

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

General Statutes § 29-37, entitled "Penalties," provides in pertinent part: "(b) Any person violating any provision of subsection (a) of section 29-35 may be fined not more than one thousand dollars and shall be imprisoned not less than one year nor more than five years, and, in the absence of any mitigating circumstances as determined by the court, one year of the sentence imposed may not be suspended or reduced by the court. The court shall specifically state the mitigating circumstances, or the absence thereof, in writing for the record. Any pistol or revolver found in the possession of any person in violation of any provision of subsection (a) of section 29-35 shall be forfeited."

## I

The defendant first contends that the trial court improperly overruled his motion to suppress admissions that he had made to Detective David Silva of the Bridgeport police department at the Bridgeport police headquarters on the evening of December 26, 1988, shortly after he was apprehended.[3] From the evidence adduced at a suppression hearing and at trial the court could reasonably have found the following relevant facts. The defendant, who was seventeen years old and had had prior experience with the police, was apprehended on December 26, at the home of his girlfriend. Thereafter, he was taken to Bridgeport police headquarters where he was advised of his *Miranda*[4] rights by Silva, who used a standard police rights form for that purpose. At the suppression hearing Silva testified that, in his presence and that of another police officer, the defendant, after he had been advised of his rights, had executed the uppermost portion of the waiver form, had initialed each individual warning of rights and had signed the rights form at the bottom. Silva further testified that he was aware that the defendant had been advised of his rights on previous occasions and that, when advised of his rights on this occasion, the defendant appeared to understand them and had no trouble communicating or expressing himself clearly. Silva also testified that after the defendant had been advised of his rights and had executed the waiver, the defendant had said, "I will tell you about it, but I wouldn't give a statement."[5] Thereafter, Silva

[3] The state does not dispute that the defendant was in custody at the time he gave the statement and that the statement was in response to police interrogation.

[4] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] An express written or oral waiver is strong proof of the validity of the waiver. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979).

testified, the defendant told him that he had been followed by Hollyfield, that the two had argued, and that Hollyfield had slapped him in the face, whereupon the defendant had shot him. The defendant denied that he was attempting to rob Hollyfield of the microwave oven. Silva said that he had made no record, either written or taped, of the defendant's admissions.

## A

The defendant initially argues in support of his suppression claim that his admissions should have been suppressed because they were not knowingly and intelligently made. This argument is premised on the defendant's claim that had he fully understood the implications of his oral admissions, i.e., that they could be used against him, he would not have made them. He contends that he obviously did not intend to waive his right to remain silent because, although he agreed to tell Silva what had happened, he refused to give "a statement." The defendant argues, therefore, that in making his oral admissions, he did not recognize the consequences of his action and, therefore, could not have acted with the "full awareness" required for a valid waiver of his right to remain silent and not to incriminate himself. He claims that, as a result, his oral admissions were not knowingly and intelligently made and should not have been admitted at trial. We disagree.[6]

This claim of the defendant is foreclosed by our decision in *State* v. *Barrett,* 205 Conn. 437, 450, 534 A.2d

[6] "We have noted that it is a common experience of life that in many circumstances persons are willing to convey information orally but are reluctant to put the same thing in writing. *State* v. *Frazier,* [185 Conn. 211, 225, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982)], quoting *United States* v. *Cooper,* 499 F.2d 1060, 1062 (D.C. Cir. 1974). . . ." (Internal quotation marks omitted.) *State* v. *Whitaker,* 215 Conn. 739, 756, 578 A.2d 1031 (1990).

219 (1987). "In *Barrett,* we held that an accused had knowingly and intelligently waived his federal right against self-incrimination despite the fact that he refused to commit anything to writing and would provide only oral statements to the police."[7] *State* v. *Lewis,* 220 Conn. 602, 613–14, 600 A.2d 1330 (1991); see also *State* v. *Harris,* 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983); *State* v. *Frazier,* 185 Conn. 211, 225, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). An analogous factual situation and similar reasoning also support the conclusion in the instant case that, as in *Barrett,* the defendant had validly waived his right to remain silent. Contrary to the defendant's suggestion, the law does not require the police to counsel a suspect about the various modes of communication that might qualify as admissible evidence at trial, so long as the police give him appropriate *Miranda* warnings and ascertain his understanding that he has a right to remain silent and that anything he says can be used against him.

## B

The defendant next claims that his statement should not have been admitted into evidence at his trial because it was not made voluntarily. We are unpersuaded.

"The use of an involuntary statement of a defendant in a criminal trial violates a defendant's right to

[7] The defendant purports to rely on both the federal and state constitutions to support his claims. There is, however, no separate analysis of his state constitutional claims. We have consistently declined to consider state constitutional claims in criminal cases in the absence of an independent analysis of the particular state constitutional provisions at issue. *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991); *State* v. *Mooney,* 218 Conn. 85, 89 n.5, 588 A.2d 145, cert. denied,        U.S.      , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

due process of law. *State* v. *Boscarino,* 204 Conn. 714, 740, 529 A.2d 1260 (1987); *State* v. *Smith,* 200 Conn. 465, 475, 512 A.2d 189 (1986). As a prerequisite to admissibility the state is required to prove, by a preponderance of the evidence, that under all the circumstances admissions by an accused were voluntarily made. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Chung,* 202 Conn. 39, 53, 519 A.2d 1175 (1987); *State* v. *Stankowski,* 184 Conn. 121, 131, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Vollhardt,* 157 Conn. 25, 34, 244 A.2d 601 (1968). The issue of whether [admissions are] voluntary and admissible is, in the first instance, one of fact for determination by the trial court in the exercise of its legal discretion. *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); see *Jackson* v. *Denno,* 378 U.S. 368, 395, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Our usual deference to the trial court's finding on questions of this nature is qualified by the necessity for an independent examination of the entire record to determine whether the trial court's finding of voluntariness is supported by substantial evidence. *State* v. *Toste,* 198 Conn. 573, 576, 504 A.2d 1036 (1986); *State* v. *DeForge,* 194 Conn. 392, 398, 480 A.2d 547 (1984). *State* v. *DeAngelis,* 200 Conn. 224, 232, 511 A.2d 310 (1986); *State* v. *Chung,* supra, 54." (Internal quotation marks omitted.) *State* v. *Kane,* 218 Conn. 151, 160, 588 A.2d 179 (1991).

An examination of the record leads us to conclude that there is substantial evidence to support the trial court's finding that the defendant's admissions were freely and voluntarily made. Our review clearly indicates that under all the circumstances, including the defendant's age and experience, there was no police conduct that "was such as to overbear [the defendant's]

will to resist and bring about [a statement] not freely self-determined . . . ." *Rodgers* v. *Richmond,* 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961); *State* v. *Boscarino,* supra, 740; *State* v. *Smith,* supra, 477; *State* v. *Shifflett,* 199 Conn. 718, 727, 508 A.2d 748 (1986).[8] This claim of the defendant is unfounded.

## II

The defendant next contends that certain comments made by the prosecutor during closing argument concerned the defendant's election not to testify and violated his constitutional and statutory right to remain silent, and thereby denied him a fair trial. See *Doyle* v. *Ohio,* 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *Griffin* v. *California,* 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965); see also General Statutes §§ 54-84, 54-1b and 54-1c.

In a portion of his closing argument, the prosecuting attorney stated, "Now, the way the situation is worked out and the way that you heard it occurred, you know that there are only two people in the world who would tell you exactly what happened there on December the 23rd, 1988. You know one of the those people was Dwayne Hollyfield." Then, after briefly discussing Hollyfield's life style and importuning the jury not to let that life style diminish the seriousness of the offense, the prosecutor said, "The other person who knows exactly what happened on December 23rd, 1988, is sitting right over there next to [defense counsel]."

---

[8] The defendant argued that one of the reasons that his confession was involuntary was that he had used marihuana earlier on the day that he was apprehended. However, in response to a request during the suppression hearing to describe what effect the smoking of two marihuana "joints" was having on him at the time he was arrested, the defendant replied, "They really didn't have no effect. All marihuana does to you is get you in a mellow mood to go to sleep."

Immediately thereafter, however, the prosecutor stated, "You would not know that but for the fact that he made three—at least three very serious mistakes—serious errors in judgment after he committed the murder. [Number one] in misjudging his relationship with Zaida Figueroa and telling her what happened. [Number two,] by failing to anticipate that by telling Yen McGee, his friend, he goes over and tells Yen McGee. Somewhere down the line Mr. McGee gets put in a situation where it becomes a better idea to tell what he knows than to try to mislead the police. And perhaps his biggest mistake is not realizing the significance of telling David Silva at the police department what he told him."

The defendant, at trial, did not object to the prosecutor's remarks, nor did he take an exception, ask for a mistrial or a curative instruction, or otherwise indicate to the court any displeasure with the prosecutor's argument. Because he failed to preserve his claim at trial, the defendant now requests that we review the claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). He also argues that it should be reviewed as plain error under Practice Book § 4185.[9]

---

[9] "[Practice Book] Sec. 4185. (Formerly Sec. 3063). ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

In determining whether a prosecutor's comments have encroached upon a defendant's right to remain silent we have espoused the following criterion. " 'A test for evaluating a prosecutor's argument that has been adopted by several courts and approved by the Court of Appeals of this circuit in *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1269 (2d Cir.), cert. denied sub nom. *Leak* v. *Follette,* 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 [1970], seems adequate and proper[, that is]: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" ' " *State* v. *Walker,* 206 Conn. 300, 307, 537 A.2d 1021 (1988).

In this case, we conclude that the prosecutor's remarks would reasonably have been interpreted by the jury, not as a comment on the defendant's failure to testify, but rather to have been an observation that the defendant, who knew what had happened, had informed three others that he had shot someone on Stillman Street on December 23, 1988, that the three in turn had testified as to what they had been told, and that the jury, therefore, had for its consideration the defendant's own account of what had transpired. That, indeed, appears to be the more cogent construction to be attributed to the prosecutor's argument. At any rate, the segment of the argument complained of was not "manifestly intended to be, [nor] was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Internal quotation marks omitted.) *State* v. *Walker,* supra, 307; *United States ex rel. Leak* v. *Follette,* supra, 1269. "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."

*Donnelly* v. *DeChristoforo,* 416 U.S. 637, 647, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). Because there was no clear constitutional violation, and the defendant did not raise this issue at trial, we refuse to review it further. *State* v. *Golding,* supra, 240. Moreover, the failure of the trial court, sua sponte, to take action was not plain error given the interpretation that could reasonably be placed on the prosecutor's remarks.[10]

## III

The defendant next claims that the trial court violated his rights to confront witnesses, to present a defense, to due process and to a fair trial when it denied him the opportunity to present extrinsic evidence that his former paramour, Zaida Figueroa, had not been truthful in her response to some questions asked of her on cross-examination.

On cross-examination, counsel for the defendant inquired extensively of Figueroa concerning her relationship with the defendant. At one point in that inquiry he asked Figueroa if she had communicated with the defendant while he had been in custody since his arrest. She denied having done so. Thereafter, when shown letters addressed to the defendant's custodial lodging, she denied having written them.

In an effort to impeach Figueroa's credibility by demonstrating that the facts were inconsistent with her testimony on cross-examination, the defendant attempted to enter the letters into evidence. In his effort to do so, he made an offer of proof outside the presence of the jury. That offer consisted of the testimony of Deborah Fabrizi, who had been a close friend of

---

[10] " '[Plain error review] is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985)." *State* v. *Foreshaw,* 214 Conn. 540, 546–47, 572 A.2d 1006 (1990).

Figueroa. Fabrizi identified the letters as having been written by Figueroa to the defendant. She testified that she was knowledgeable as to the source of the letters because she had seen Figueroa write them; she had read some of the letters; and she recognized Figueroa's handwriting. She described the letters as "lovey dovey" letters from Figueroa to the defendant. She also testified that she knew that the defendant had received the letters because she was aware that the defendant and Figueroa had discussed them over the telephone.

The state objected to the admission of the letters and Fabrizi's testimony. The trial court sustained the state's objection on the ground that the evidence was collateral and irrelevant. The defendant took an exception to the court's ruling. He did not, however, in the trial court make any constitutional claim in conjunction with his exception. See Practice Book § 288;[11] see also *Mays* v. *Mays,* 193 Conn. 261, 268, 476 A.2d 562 (1984). The defendant argues again, however, that we should now examine the constitutional claim he raises on appeal under *State* v. *Evans,* supra, and *State* v. *Golding,* supra. We disagree.

A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case. *State* v. *Burns,* 173 Conn. 317, 327, 377 A.2d 1082 (1977); *State* v. *Carbone,* 172 Conn. 242, 262, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977); *State* v. *Wilson,*

---

[11] "[Practice Book] Sec. 288. OBJECTIONS TO EVIDENCE

"Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

158 Conn. 321, 324, 260 A.2d 571 (1969). Further, the trial court has broad discretion in ruling on the admissibility of evidence and the scope of cross-examination to show contradictory statements. *State* v. *Miller,* 202 Conn. 463, 482, 522 A.2d 249 (1987); *State* v. *Reed,* 174 Conn. 287, 304, 386 A.2d 243 (1978). We will not disturb that discretion unless a clear abuse is demonstrated. *State* v. *Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985).

In this instance we conclude that it was within the trial court's discretion to have made a determination that the letters and Fabrizi's testimony were collateral to any issue linked to a proper determination of the defendant's responsibility for Hollyfield's death and were, therefore, not admissible. Because the court's ruling was within its discretion, the defendant's constitutional rights were not violated. See *State* v. *Fullwood,* 199 Conn. 281, 284, 507 A.2d 85 (1986). The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses. " 'In the exercise of [those rights], the accused, as required of the State, must comply with the established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' *Chambers* v. *Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) . . . ." *State* v. *Kemp,* 199 Conn. 473, 479, 507 A.2d 1387 (1986); *State* v. *Kelly,* 208 Conn. 365, 376, 545 A.2d 1048 (1988).

Because the record fails to disclose that a constitutional violation clearly exists, we refuse to review further this claim of the defendant. *State* v. *Golding,* supra, 240.[12]

[12] Even if the trial court's ruling were incorrect, it would constitute evidentiary, not constitutional, error. "Every evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985). Because there was substantial other evidence admitted at trial attacking Figueroa's credibility, the defendant would be unable to sustain his bur-

## IV

The defendant's final claim is that the trial court improperly allowed the jury to hear testimony that the defendant was a sentenced prisoner. The defendant contends that divulging this information to the jury was so prejudicial that it deprived him of a fair trial and requires reversal. We disagree.

During the course of the trial, Edward Davies, the deputy warden of the Bridgeport Correctional Center, was called as a witness by the defendant. Davies, who was in possession of the defendant's institutional records, testified as to the number of visits by Figueroa to the defendant while the defendant was housed in the Manson Youth Institution in Cheshire.[13] During the cross-examination of Davies by the state, Davies was asked if he knew whether the defendant's status at Cheshire had been that of a sentenced or unsentenced prisoner. The defendant objected to the question. The court thereupon told that witness that he could answer the question, "yes" or "no." Davies, however, apparently not understanding the court's admonition, answered, "At the time he was at Manson, he was sentenced."[14] The trial court immediately, sua sponte, granted an "exception" to the defendant.

The defendant did not move that Davies' answer be stricken, nor did he move for a mistrial or request a curative instruction. Immediately after Davies' answer, the inquiry took another tack, and there was no further exploration of the defendant's status as a sentenced or unsentenced prisoner. No explanation was

den of proving that the trial court's ruling was harmful. *State* v. *Jones*, 205 Conn. 723, 732, 535 A.2d 808 (1988).

[13] The defendant had been housed at the Manson Youth Institution prior to his transfer to Bridgeport for the trial of this matter. When he was transferred, apparently his records also were transferred.

[14] Prior to the time he was tried for Hollyfield's murder, the defendant had been convicted and sentenced for other, unrelated crimes.

given to the jury concerning the difference between a sentenced and an unsentenced prisoner, no mention was made of any of the crimes for which the defendant had been sentenced and the state did not refer to the defendant's status when it made its final arguments. Moreover, despite the lack of a request, the trial court incorporated a curative instruction addressing Davies' answer in its charge to the jury. That instruction clearly informed the jury that any reference in Davies' testimony to the defendant's status was not to be used as evidence of guilt.[15]

There appears to have been no justification for the admission into evidence of Davies' answer to the prosecutor's question and the state does not argue that the answer was admissible. The state does argue, however, that this issue has assumed an importance on appeal that it does not appear to have had at trial. We agree. At trial, Davies' answer was not viewed by the defendant as sufficiently prejudicial to warrant a motion to strike, a motion for a mistrial, or a request for a curative instruction. When counsel does not choose to make a request for a curative instruction or a mistrial, "he presumably does not view the remarks as so prejudicial that his client's right to a fair trial is seriously jeopardized." *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983).

Moreover, despite the lack of a request for a curative instruction, the trial court did deliver a charge to the jury that clearly informed the jurors that they were not to consider the defendant's status as any evidence

---

[15] The trial court's instruction was: "Now, during the cross-examination of Deputy Warden Davies, I believe that was last Friday, the State asked a question about the defendant's status as a prisoner. That question and the answer to it only go to the nature and the purpose of the visiting records which were placed in evidence by the defendant *and I caution you it may not be used as evidence of guilt in this case.*" (Emphasis added.)

of guilt. "The jury are presumed to follow the court's directions in the absence of a clear indication to the contrary." *State* v. *Griffin,* 175 Conn. 155, 160, 397 A.2d 89 (1978); *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984); *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980).

In view of the fact that Davies' answer was solitary, was not pursued and was the subject of a curative instruction, we conclude that the inadvertent admission into evidence of that single answer, in the context of the entire trial, was harmless. See *State* v. *Glenn,* supra, 497.

The judgment is affirmed.

In this opinion the other justices concurred.