STATE OF CONNECTICUT *v.* DEVON SMITH
(AC 16024)

Dupont, C. J., and Landau and Shea, Js.

Argued May 1—officially released August 19, 1997

*Daniel S. Fabricant*, special public defender, for the appellant (defendant).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Steven Preleski*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Devon Smith, appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[2] On appeal, the defendant claims that the trial court improperly (1) excluded impeachment evidence regarding the prior conviction of a state's witness, (2) violated his right to confrontation, and (3) found the evidence sufficient to support his conviction. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 25, 1993, the victim, Michael Diaz, walked to Hartford Hospital with his girlfriend, Carmen Echevarria, to receive treatment. Anthony Carrier, the victim's friend, also known as "Teaspoon," was working at Hartford Hospital, saw Echevarria at the hospital and offered her and Diaz a ride home. Sometime later that night, Carrier, Diaz and Echevarria drove to Park Street near Putnam and Zion Streets to purchase marijuana. That area was controlled by gang members who were rivals of the gang to which Diaz belonged.

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

In the early morning of November 26, 1993, Carrier parked his car on Park Street across from Portilla's Cafe. He exited the car and approached a group of men standing near the cafe. Diaz and Echevarria remained in Carrier's car. Carrier then returned to his car accompanied by two gang members who recognized Diaz as a rival, argued with him, threatened him, and told him to leave. Diaz got out of Carrier's car and told the group that he was no longer a part of "the gang thing."

Diaz and Carrier started to return to the car, when someone fired several shots at Diaz, fatally wounding him. Neither Carrier nor Echevarria was able to identify the person who fired the shots. Carrier's back was turned and Echevarria observed only that the person who fired the shots was dressed all in black.

Richard Rodriquez, a member of the defendant's gang at the time of the shooting, had moved to Connecticut from New Jersey to live with his gang "family" at the gang's headquarters in Hartford. He knew the defendant. He had been incarcerated shortly after moving to Hartford and, after his fellow gang members failed to post bond for him, he began to inform the Hartford police of gang activity, while outwardly maintaining his gang membership.

On November 26, 1993, prior to the shooting, Rodriquez spoke to the defendant on the porch of a Park Street building next door to Portilla's Cafe. The defendant told Rodriquez that he was watching for rival gang members in the area. The defendant and Rodriquez then went inside the building, and Rodriquez saw the black handle of a nine millimeter gun in the defendant's front hip pocket. Rodriquez asked if he could be on the lookout with the defendant, and the defendant agreed. The defendant also told Rodriquez that he had another gun, but Rodriquez did not see the second gun.

Rodriquez told the defendant that he would be back shortly and went to the cafe. Rodriguez heard several shots fired, exited the cafe, and saw the defendant in the middle of Park Street firing more shots in the direction of Diaz and Carrier. He saw the barrel of the gun, but not the handle, which was covered by the defendant's hand. The weapon was the same color as the gun that the defendant had seen.

On November 27, 1993, the police found the weapon that had been used to kill Diaz. There were no fingerprints on the gun. When the police arrested the defendant, they seized his leather coat for testing. The coat did not test positive for gunpowder residue.

## I

In his first claim, the defendant makes three distinct arguments. The defendant claims that the trial court (1) improperly excluded impeachment evidence regarding the prior conviction of a state witness, (2) violated his state and federal constitutional rights to present a defense and to confront the witnesses against him, and (3) violated his due process rights by inquiring into the underlying facts of the felony to determine whether it implicated veracity. We will address these arguments in turn.

## A

The defendant argues that he should have been permitted to impeach Rodriquez, a critical state's witness, by naming his prior conviction, "Terroristic Threats," because that crime implicates veracity. At trial, the court granted the state's motion in limine to permit reference to the prior felony only as an unnamed felony, concluding that the felony, terroristic threats, did not implicate veracity. Defense counsel objected, arguing that the felony does implicate veracity.

According to General Statutes § 52-145 (b), "[a] person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility." In addition, "[w]hen a trial court concludes that the fact of a prior felony conviction is admissible to impeach a witness' veracity, generally both the title of the offense and the date of the conviction should be admitted before the jury. *State* v. *Geyer*, [194 Conn. 1, 8, 480 A.2d 489 (1984)]; see *State* v. *English*, 132 Conn. 573, 580, 46 A.2d 121 (1946). [Our Supreme Court has] held, however, that when the conviction at issue is not for an offense that reflects directly on the veracity of the person convicted of it, the balance used to measure admissibility of prior convictions is weighted less heavily toward admitting the prior conviction . . . . *State* v. *Geyer*, supra, 13. . . . To avoid unwarranted prejudice to the witness, when a party seeks to introduce evidence of a felony that does not directly bear on veracity, a trial court ordinarily should permit reference only to an unspecified crime carrying a penalty of greater than one year that occurred at a certain time and place. Id., 16." (Citation omitted; internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 780, 601 A.2d 521 (1992).

The trial court properly concluded that the crime of terroristic threats[3] does not directly reflect on the convicted witness' veracity. The defendant relies on three New Jersey cases[4] for the proposition that the

[3] New Jersey Statutes Annotated § 2C:12-3 (a) (West 1995) proscribes terroristic threats as follows: "A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."

[4] In *State* v. *Battle*, 209 N.J. Super. 255, 257, 507 A.2d 297 (1986), and *State* v. *Pyron*, 202 N.J. Super. 502, 503, 495 A.2d 467 (1985), the Appellate Division of the Superior Court of New Jersey held only that a terroristic threats crime merges with a robbery crime when the threat is "incidental" to the robbery. In *State* v. *Logan*, 262 N.J. Super. 128, 620 A.2d 431 (1993), the

crime of terroristic threats implicates veracity and can be used for impeachment. We are unpersuaded.

"We will not disturb the trial court's determination as to the admissibility of a prior conviction to impeach a witness absent an abuse of discretion. *State* v. *Braswell,* [194 Conn. 297, 307, 481 A.2d 413 (1984), cert. denied, 469 U.S. 1112, 105 S. Ct. 793, 83 L. Ed. 2d 786 (1985)]; *State* v. *Nardini,* [187 Conn. 513, 521–22, 447 A.2d 396 (1982)]." *State* v. *Webb,* 37 Conn. App. 722, 732, 657 A.2d 711 (1995). In the present case, the trial court did not abuse its discretion in excluding the name of the offense and allowing only the fact of the witness' previous felony conviction for purposes of impeachment. See *State* v. *Pinnock,* supra, 220 Conn. 782 (trial court properly exercised discretion in limiting impeachment of critical state's witness to unspecified felony rather than naming offense because felony "was not directly related to his veracity").

B

The defendant next claims that, by precluding the defendant from impeaching the state's witness with the name of the felony, the trial court violated his right to confrontation and his right to present a defense as guaranteed under article first, § 8, of the Connecticut constitution and the sixth and fourteenth amendments to the United States constitution. The defendant claims that he is entitled to review of this unpreserved claim pursuant to *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[5] Even if we assume arguendo that the record

Appellate Division affirmed the trial court's decision to allow the prosecution to impeach the defendant with his prior convictions of burglary, theft and terroristic threats without any legal analysis. The Appellate Division merely stated that the defendant's claim was "clearly without merit." Id., 130. Therefore, the trial court, in its discretion, may have permitted impeachment using only the fact of conviction and not the title of the offense.

[5] Under *State* v. *Golding,* supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged

is adequate to review and the defendant's claim is of constitutional magnitude, his claim fails because the alleged constitutional violation does not clearly exist.

" 'The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses.' *State* v. *Negron*, 221 Conn. 315, 328, 603 A.2d 1138 (1992). In the exercise of his rights, the defendant, as well as the state, must comply with the established rules of evidence and procedure. Id.; *State* v. *Kemp*, 199 Conn. 473, 479, 507 A.2d 1387 (1986)." *State* v. *Boles*, 223 Conn. 535, 550, 613 A.2d 770 (1992). As we discussed in part I A of this opinion, the trial court properly exercised its discretion by permitting the defendant to impeach the state's witness only with an unnamed felony. Therefore, the alleged constitutional violation does not clearly exist, and the third prong of *Golding* has not been met.

C

The defendant next claims that he is entitled to review pursuant to *State* v. *Golding*, supra, 213 Conn. 240, because the trial court improperly inquired into the underlying facts of the terroristic threats conviction to determine whether that crime implicated veracity. The defendant asserts that the inquiry deprived him of his constitutionally guaranteed right to a fair trial pursuant to the due process clause.[6] We are unpersuaded that the defendant's claim is of constitutional magnitude.

claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.)

[6] U.S. Const., amend. XIV.

The defendant argues that the facts and circumstances underlying the terroristic threats felony were unproven hearsay allegations, and, therefore, inadmissible.[7] By agreement, the prosecutor and the defense counsel delivered a copy of the relevant documents regarding the felony to the trial court for its review.[8] "The defendant . . . bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." Id., 240.

The defendant mistakenly relies on three Connecticut cases for the proposition that the trial court should not inquire into the underlying facts of a conviction.[9] Here,

---

[7] The prosecutor received, in facsimile form, Rodriquez' indictment, and a sheet indicating the disposition, a copy of the terroristic threats statute, and a copy of the incident report completed by police in New Jersey

[8] During the recess, the judge reviewed the documents, and, after the recess, the following colloquy took place:

"[Prosecutor]: My point is that while the—first of all, while his criminal printout from New Jersey might say 'intimidation,' that's actually incorrect. It appears he was convicted of some sort of a threatening charge, terroristic threatening. And upon my review of the report, it appears to me that this would be akin in Connecticut to a threatening statute, and I don't feel that it's a crime for which he should be impeached, particularly in view of the connotation of the word 'intimidation' on his—on his New Jersey printout is, in my view, a—first of all, not accurate and, second, just very prejudicial if that were to be used. . . .

"[Defense Counsel]: Your Honor, I don't think I'm in a position to argue whether or not New Jersey's characterization in its document of the crime of intimidation is inaccurate. Also, according to the document [the prosecutor] gave me, the last page of the document is titled 'Additional Details of Offense, Progress of Investigation' etc. If the court has had an opportunity to read that page, it would appear that the underlying facts support what we in Connecticut would consider a robbery, an armed robbery. Therefore, since larceny is a component of robbery and larceny goes to veracity, I would submit that the named felony should be admitted."

[9] In *Banach* v. *Bohinski*, 107 Conn. 156, 158, 139 A. 688 (1927), the court excluded documents "on the ground that, because of incompleteness and lack of authentication, they did not constitute admissible records." In this case, unlike in *Banach*, no one attempted to admit the documents as admissi-

the trial court looked to the underlying circumstances of the witness' out-of-state felony conviction at the request of counsel. The inquiry was for the limited purpose of determining whether the witness' conviction in New Jersey for terroristic threats implicated veracity. Neither the underlying facts nor the name of the offense was disclosed to the jury, and the judge prevented inquiry into the guilt or innocence of the witness. As a result, the defendant has failed to demonstrate that his claim implicates his due process right to a fair trial, and, therefore, has failed to satisfy the second prong of *Golding*. See footnote 5.

## II

The defendant next claims that the trial court deprived him of his right to confrontation and to present a defense pursuant to article first, § 8, of the Connecticut constitution because the trial court precluded him from impeaching a state's witness with the contradictory testimony of defense witnesses. The defendant concedes that his claim is unpreserved, but seeks appellate review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[10] The defendant also seeks review under the plain error doctrine.[11]

The defendant, during his case-in-chief, attempted to elicit information from two witnesses to use as extrinsic evidence to impeach, through contradiction, the state's

ble records. In *Hall* v. *Brown*, 30 Conn. 551 (1862), and *Spiro* v. *Nitkin*, 72 Conn. 202, 44 A. 13 (1899), the court held that only the fact or record of conviction should be used by the trial court, thereby preventing a trial on the question of guilt. In the present case, only the fact of conviction was used to impeach the witness. The court avoided a trial on the question of guilt and used the underlying circumstances only to make a threshold determination as to whether the out-of-state felony implicated veracity. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.5.8, p. 59 ("preliminary questions of fact are properly decided by the court").

[10] See footnote 5.
[11] See Practice Book § 4061.

witness' statements made during the state's case-in-chief. The first portion of evidence concerned officer Jesus Rivera's arrest of the state's witness, Rodriquez, at the apartment of Aricelli Velez. The defendant sought to have Rivera testify that, contrary to Rodriquez' testimony that he was in Velez' apartment to retrieve certain items belonging to the gang, Rodriquez was actually there harassing Velez. The defendant also sought to have Rivera testify that Velez had told him that Rodriquez was holding her there. The state objected and the court sustained the objection, ruling that they were collateral matters.

The defendant also sought to elicit testimony from Velez that, contrary to Rodriquez' testimony that he came to Connecticut to be with his gang "brothers" and "family," Rodriquez actually came to Connecticut to avoid two murder charges against him in New Jersey. The state objected and the court sustained the objection ruling that the evidence was hearsay and collateral.

"Ordinarily, extrinsic evidence of prior inconsistent statements cannot be used to contradict the testimony of a witness, and this rule is strictly observed when the witness' testimony relates to a collateral matter. *State* v. *Burns*, 173 Conn. 317, 327, 377 A.2d 1082 (1977)." *State* v. *Colton*, 227 Conn. 231, 247, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). "A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case." *State* v. *Negron*, supra, 221 Conn. 327.

The trial court properly concluded that evidence tending to show that Rodriquez was actually in Velez' apartment, harassing and holding her there, is collateral. This evidence was not relevant and material to the merits of the case, because its sole purpose was to contradict the

witness. Similarly, evidence tending to show that Rodriquez came to Connecticut to flee murder charges in New Jersey is collateral. This fact was relevant and material only to contradict Rodriquez' prior testimony.

"Further, the trial court has broad discretion in ruling on the admissibility of evidence and the scope of cross-examination to show contradictory statements. *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987); *State* v. *Reed*, 174 Conn. 287, 304, 386 A.2d 243 (1978). We will not disturb that discretion unless a clear abuse is demonstrated. *State* v. *Parker*, 197 Conn. 595, 601, 500 A.2d 551 (1985)." *State* v. *Negron*, supra, 221 Conn. 328. The trial court did not abuse its discretion in finding that the defense witnesses' proffered testimony was collateral and therefore inadmissible.

"Because the court's ruling was within its discretion, the defendant's constitutional rights were not violated. See *State* v. *Fullwood*, 199 Conn. 281, 284, 507 A.2d 85 (1986). The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses." *State* v. *Negron*, supra, 221 Conn. 328. Therefore, even if the defendant's claim is of a constitutional magnitude, the defendant's claim fails the third prong of *Golding* because the alleged constitutional violation did not clearly exist.[12]

### III

The defendant next claims that the evidence was insufficient to permit the jury to find him guilty of mur-

---

[12] The defendant also claims that he is entitled to plain error review pursuant to Practice Book § 4061. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Miller*, [supra, 202 Conn. 469]." (Internal quotation marks omitted.) *State* v. *Boles*, supra, 223 Conn. 551. Since we conclude that there was no evidentiary error, there was also no obvious error that affected the proceedings.

der. Although the defendant failed to preserve this claim at trial, it is nonetheless entitled to review under *State* v. *Golding*, supra, 213 Conn. 233. "Our Supreme Court has stated that sufficiency of the evidence claims 'necessarily meet the four prongs of *Golding*.' *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993); see also *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995)." *State* v. *Adorno*, 45 Conn. App. 187, 194, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997). The defendant argues that the evidence was insufficient because the state failed to link the defendant to the murder weapon. We disagree.

" 'When we are called on to review a sufficiency of the evidence claim, we impose a two part analysis. We first construe the evidence in the light most favorable to sustaining the verdict. . . . We next determine whether, from that evidence and all the reasonable inferences that flow from the evidence, a trier of fact could reasonably find that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz*, [226 Conn. 20, 31, 627 A.2d 862 (1993)]; *State* v. *Rivera*, [32 Conn. App. 193, 200–201, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993)].' *State* v. *Reddick*, 33 Conn. App. 311, 332, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994)." (Citations omitted.) *State* v. *Ketchum*, 45 Conn. App. 270, 280, 696 A.2d 987 (1997). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Jones*, 44 Conn. App. 338, 342, 689 A.2d 517 (1997). "While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. *State* v. *Castonguay*, 218 Conn. 486, 507, 590 A.2d 901 (1991). If it

is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. *State* v. *Grant*, 219 Conn. 596, 604–605, 594 A.2d 459 (1991). *State* v. *Pinnock*, [supra, 220 Conn. 771]. [W]e must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . *State* v. *Mejia*, [233 Conn. 215, 224, 658 A.2d 571 (1995)]. . . . *State* v. *James*, 237 Conn. 390, 435–36, 678 A.2d 1338 (1996)." (Internal quotation marks omitted.) *State* v. *Gould*, 241 Conn. 1, 6–7, 695 A.2d 1022 (1997).

After reviewing the evidence, we conclude that it was sufficient to support the defendant's conviction of murder. Rodriquez saw the black handle of a nine millimeter gun that the defendant was carrying in his hip pocket shortly before the shooting. A short time later, Rodriquez saw the defendant shooting toward Diaz, saw Diaz fall, and saw that the barrel of the gun was the same color as the gun he had seen a short time earlier.

Although there were no fingerprints on the black nine millimeter gun when the police seized it, the jury could have reasonably inferred from the evidence that it was the same gun the defendant used to shoot Diaz. The police were informed that the gang members were hiding guns in a vacant apartment near the location of the shooting. The jury could have reasonably concluded that the fingerprints were wiped clean. Additionally, the jury reasonably could have inferred that the lack of gunpowder residue on the defendant's jacket was not exculpatory. The state laboratory criminalist who

examined the coat and the detective who sent the coat for the examination believed that traces of gunpowder were unlikely to remain on the jacket for the fifteen day period between the shooting and when the jacket was seized.

Further, Victor Alejandro, a gang member, saw the defendant in an alley shortly after the shooting when the police officers were investigating the shooting. Alejandro saw the defendant walk up to a gate and then step back, at which time Alejandro said, "Stay there til the cops jet, and I'll tell you to come out." After the officers left, the defendant went to Alejandro's apartment and asked for a change of clothes. Although there was no testimony that the defendant changed into the jeans that Alejandro provided, the jury could have reasonably inferred that the defendant was attempting to change his appearance.

After construing the evidence in the light most favorable to sustaining the verdict, we conclude that, the jury could have reasonably found that the defendant was guilty beyond a reasonable doubt. The defendant's claim that the evidence was insufficient is, therefore, without merit.

The judgment is affirmed.

In this opinion the other judges concurred.