STATE OF CONNECTICUT *v.* CLARENCE DANIELS

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued November 16, 1979—decision released March 18, 1980

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *C. Douglas Nash,* assistant public defender, for the appellant (defendant).

*Richard L. Shiffrin,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant was convicted after a trial to the jury of sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[1] The trial court denied his motion for a new trial, filed pursuant to Practice Book, 1963, § 2313 (now Practice Book, 1978, § 902), and for acquittal, filed pursuant to Practice Book, 1963, § 2310 (now Practice Book, 1978, § 899), and this appeal followed.

From the evidence the jury could reasonably have found the following facts which provide the setting for the claims pursued by the defendant

---

[1] Specifically, the information charged that the defendant compelled Angelina Haywood to engage in sexual intercourse by the use of force in violation of General Statutes § 53a-70 (a).

on this appeal: At about 8 a.m. on July 9, 1978, the victim was in bed at her apartment in Father Panik Village in Bridgeport when she heard a knock on her door. After inquiring as to who was there, she admitted the defendant whom she had known for approximately one month and whom she had seen as recently as 2 a.m. that same morning.[2] He stated that he wanted to use the bathroom. After doing so, he grabbed her, dragged her into the bedroom and forced her to have sexual intercourse with him. Before leaving her, the defendant told the victim that he was sorry and that she was not to tell "Donna" what had happened. Immediately after this incident, the victim dressed and went to the house of her girlfriend, Donna Bagley. The victim told Bagley that she had been raped and asked her to go to the hospital with her.[3] Because Bagley was unable to accompany the victim, another girlfriend, Edith Martin, took her by car to the Bridgeport Hospital where she was admitted to the emergency room at 9:08 a.m.

Dr. Frank Elliot was working in the emergency room at the Bridgeport Hospital on July 9, 1978, and he examined the victim on her admission to the emergency room. That examination disclosed, among other things, a small tear within the vagina which, according to his opinion, was caused by forceful entry. Laboratory testing for the presence of spermatozoa was positive. During the examination, the victim also related the circumstances of the attack and her concerns arising out of it. The

---

[2] The victim testified that the defendant and Robert Days had been in her apartment at about 2 a.m. the morning of the assault and that they remained for five or ten minutes.

[3] Donna Bagley so testified at the trial.

hospital record was in evidence as an exhibit.[4] The testimony of a Bridgeport detective, assigned to the investigation on July 10, 1978, substantially corroborated the testimony of the victim.

## I

The defendant's preliminary statement of issues enumerated six issues for review, but only two of them are briefed by the defendant. Those issues not briefed are considered abandoned. *State* v. *Lockman,* 169 Conn. 116, 121, 362 A.2d 920, cert. denied, 423 U.S. 991, 96 S. Ct. 403, 46 L. Ed. 2d 309 (1975); *State* v. *Bitting,* 162 Conn. 1, 3, 291 A.2d 240 (1971). The defendant's first claim of error is two pronged. He claims that the court erred in admitting certain portions of the hospital record either (1) as a business record; or (2) as evidence tending to show constancy of accusation. The portion of the exhibit that generates this issue is the following notation: "Pt. appears ambivalent in also being afraid of reprisals from alleged attacker upon her return to her apartment in FPV [Father Panik Village]."

General Statutes § 4-104 provides that a hospital record may be admitted in evidence as a business record "if not otherwise inadmissible." See *Kelly* v. *Sheehan,* 158 Conn. 281, 285, 259 A.2d 605 (1969). This statute does not change any other rule of evidence but only simplifies the procedure for obtaining hospital records and facilitates their introduction into evidence. *Temple* v. *F. W. Woolworth Co.,* 167 Conn. 631, 633, 356 A.2d 880 (1975). "A hospital

[4] At the trial the state offered the entire hospital record into evidence claiming its admissibility under General Statutes § 4-104. After defense counsel objected, the court went over the hospital record with counsel excising those portions which the court found inadmissible.

record as a whole is not necessarily admissible for all purposes or as proof of all facts found therein since the admissibility of a particular entry usually depends on whether it relates to acts, transactions, occurrences or events which are relevant and incident to the hospital treatment of the patient when the entry was made at the time of the patient's care and treatment. *Maggi* v. *Mendillo,* 147 Conn. 663, 165 A.2d 603; *Ianni* v. *Daily,* 153 Conn. 445, 217 A.2d 207; 42 Am. Jur. 2d, Hospitals and Asylums, § 43; 32 C.J.S., Evidence, § 728 (c)." Ibid. The defendant's only argument on this ground is that the hospital entry in issue is not reasonably relevant to diagnosis and treatment. We have stated that "[t]he real business of a hospital is the care and treatment of sick and injured persons" and not the collection and preservation of information for use in litigation. *D'Amato* v. *Johnston,* 140 Conn. 54, 61, 97 A.2d 893 (1953). Even before the passage of General Statutes § 4-104 in 1949, we recognized the admissibility of statements of a patient made to a physician for the purpose of diagnosis and obtaining treatment. *Martin* v. *Sherwood,* 74 Conn. 475, 482, 51 A. 526 (1902); *Wilson* v. *Granby,* 47 Conn. 59, 76 (1879); see 6 Wigmore, Evidence (3d Ed.) § 1719. The rationale of the rule is that ordinarily when a patient consults physicians with a view to diagnosis and treatment he will state the truth and that such statements are trustworthy. See *Zawisza* v. *Quality Name Plate, Inc.,* 149 Conn. 115, 119, 176 A.2d 578 (1961); *United States* v. *Narciso,* 446 F. Sup. 252, 289 (E.D. S.D. Mich. 1977), construing Fed. R. Evid. 803 (4).[5]

---

[5] Federal Rule of Evidence 803 (4) is substantially parallel to the Connecticut rule. That rule admits into evidence "[s]tatements [of the patient] made for purposes of medical diagnosis or treatment

The admission of this portion of the hospital record was not error. Under the facts and circumstances of this sexual assault case, the statement in question was properly admissible as a statement made by a patient to a physician with a view toward diagnosis and treatment. The victim made the statement to a physician about one hour after she had been the victim of a sexual assault. That experience clearly jolted her emotional and physical condition. The reference to her ambivalence and fear of reprisal from the "alleged attacker," who was unnamed; cf. *Kelly* v. *Sheehan,* 158 Conn. 281, 285–86, 259 A.2d 605 (1969); is reasonably pertinent to the diagnosis and treatment sought by her from the physician to whom she made the statement. Moreover, the defendant does not claim, and our review of the record does not indicate, that any prejudicial effect of the entry outweighed its probative value. See *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *State* v. *Marquez,* 160 Conn. 47, 51–52, 273 A.2d 689 (1970). We conclude that this statement was properly admitted by the trial court under General Statutes § 4-104.

Because we have determined that the portion of the hospital record that was objected to was properly admissible under the rules of evidence and therefore under General Statutes § 4-104, we need not reach the defendant's claim that it was inadmissible on the theory of constancy of accusation.

and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

## II

The defendant's remaining claim of error is that the court erred in allowing the prosecutor to argue in summation that the jury might draw an unfavorable inference from the defendant's failure to call two witnesses, when the availability of the witnesses was never established. The defendant claims that the state's attorney's comment, upon which the trial court took no action, deprived his client of due process of law.

The analysis of this claim requires a review of the defendant's alibi defense: The defendant testified that he was with the victim in her apartment from 3 a.m. to 6 a.m. on July 9, 1978, and that Robert Days and his brother, Stanley Days, were also there. He said that everyone had met there to test and bag cocaine, which he said Robert Days sold and which the victim kept in her apartment. The defendant also testified that he, Robert Days and Stanley Days all left the victim's apartment together at 6 a.m.[6] Daniels said that he went home from there and that someone named Barbara Upchurch, who was in bed, "and her kids" were at his home. He said that he then went to bed and slept until about noon and that he did not leave his home for the rest of the day. Neither Barbara Upchurch nor Stanley Days appeared at the trial and testified.

During closing argument the prosecutor reviewed the evidence presented by the state and the defense.[7] In doing so, he referred to the defendant's testimony that when he left the victim's apartment both

---

[6] On cross-examination the defendant testified that the victim did not "go to bed with anyone" during the time these three men were there so far as he knew.

[7] The only evidence that the defense presented was the testimony of the defendant himself.

Days were with him. The prosecutor then asked: "Stanley Days is with us, as far as we know, but where is he to substantiate that story?" Continuing, the prosecutor also referred to the defendant's testimony that when he got back to his apartment at about 6 a.m., Barbara Upchurch was there, that he woke her up, that they were in bed together and that he woke up around noon. The prosecutor argued: "I want to know where's Barbara Upchurch to substantiate that he got back to that house at 6:00 o'clock?" Defense counsel moved for a mistrial immediately after the prosecutor's reference to Barbara Upchurch, arguing that the defendant had no burden to produce any witness and that the state was putting that burden on him in violation of his constitutional rights.[8] The court denied the motion and the defendant took an exception. No further mention of the matter was made during the trial. The defendant did not request that the argument be stricken from the record or that a curative instruction be given. Nor did the state request a charge on any adverse inference to be drawn from the defendant's failure to call these witnesses.

Connecticut has recognized the right of a party in a civil action to an instruction that the jury may draw an unfavorable inference from his opponent's failure to call a person as a witness where the person not called is (1) available to the party against whom the inference is sought to operate; and (2) one whom that party would naturally be expected to produce. See *Ezzo* v. *Geremiah,* 107 Conn. 670,

---

[8] Although at the trial defense counsel did not ask that the court strike the prosecutor's remarks or request the court to charge the jury to disregard them, on appeal he claims that the court should have done so sua sponte.

677, 142 A. 461 (1928); *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960); *Queen* v. *Gagliola*, 162 Conn. 164, 168, 292 A.2d 890 (1972). This charge has been dubbed the *Secondino* charge, notwithstanding that it appears to have been first formally recognized in *Ezzo* v. *Geremiah*, supra. In *State* v. *Annunziato*, 169 Conn. 517, 536–39, 363 A.2d 1011 (1975), we applied this rule to a criminal prosecution and held that such an instruction does not violate a defendant's constitutional right to remain silent "so long as neither the argument of counsel nor the charge to the jury would naturally and necessarily direct the jury's attention to the defendant's failure to testify." Id., 538; see *United States* v. *Lipton*, 467 F.2d 1161, 1168 (2d Cir. 1972), cert. denied, 410 U.S. 927, 93 S. Ct. 1358, 35 L. Ed. 2d 587 (1973); *United States ex rel. Leak* v. *Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970); annot., 14 A.L.R. 3d 723 § 8; 1 Wharton, Criminal Evidence (13th Ed.) § 150. Any comment by the prosecutor to the jury in argument that has such an effect violates the defendant's fifth amendment right to remain silent by implying that "such silence is evidence of guilt." See *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *State* v. *Evans*, 165 Conn. 61, 71–72, 327 A.2d 576 (1973). The defendant's right to remain silent is not violated, however, where he chooses to testify in his own behalf and the conclusion to which the inference is intended to lead is not one that could be rebutted only by the defendant himself. *United States* v. *Bubar*, 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977); *United States* v. *Dyba*, 554 F.2d 417, 422 (10th Cir. 1977).

We point out at the outset of our consideration of this claim that the defendant in the case before us chose to testify and that the unfavorable inference that the prosecution sought the jury to draw, i.e., that the defendant's version of the facts including his alibi was untrue, could have been rebutted by the testimony of those persons who had not been produced to testify. Thus, the defendant's fifth amendment right to remain silent has not been violated.

## A

We take up first the defendant's claim as it relates to Barbara Upchurch. In deciding whether the state satisfied the first requirement of the *Secondino* rule we must determine whether there was sufficient evidence to support a finding by the jury that the missing witness was available to the defendant. See *Raia* v. *Topehius,* 165 Conn. 231, 237, 332 A.2d 93 (1973); *State* v. *Cobbs,* 164 Conn. 402, 422–24, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973). If the evidence was sufficient to support that finding, the argument was not erroneously permitted. On cross-examination, the following took place between the state's attorney and the defendant: "Q. Who was there when you got there [defendant's home]? A. One Barbara Upchurch and her kids. Q. Is she here today in court? A. No, she isn't. Q. Do you know where she is? A. She's home, I guess." This testimony provided the jury with sufficient evidence to support a finding by it that Barbara Upchurch was available to the defendant as a witness at the time of trial.

As the summary of the defendant's case indicates, Upchurch is a person whose testimony would have

been crucial to the defendant's alibi defense as related by the defendant himself. See *State* v. *Kinsey,* 173 Conn. 344, 349, 377 A.2d 1095 (1977). It was with Upchurch that the defendant claimed he spent the time during which the sexual assault occurred. Thus, there was ample evidence to support a finding that Upchurch was someone whom the defendant would naturally be expected to produce. Therefore, both requirements of the *Secondino* test were satisfied by the state as to Barbara Upchurch.

### B

We now consider this claim as it relates to Stanley Days. The defendant states that Days' testimony "could corroborate the defendant's version of what happened, establishing a defense to the offense."[9] He concedes, therefore, that Stanley Days was a witness that he would "naturally be expected to produce." See *Secondino* v. *New Haven Gas Co.,* supra, 676. He argues, however, that the state offered no evidence to show that Days was available to him as a witness at the time of trial. We agree. The question then becomes whether, upon the defendant's objection to the argument suggesting the unfavorable inference, the court's failure to take some action to correct the improper argument was so prejudicial as to deprive the defendant of his right to a fair trial.[10] See *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 643–44, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *State* v. *Kinsey,*

[9] As the facts recited above disclose, the duration of the defendant's earlier visit at the apartment of the victim, the number of people present, and the time they left the apartment were in dispute.

[10] Although even the defendant concedes that it is "arguable" that his request for a mistrial was "extreme"; see *State* v. *Bausman,* 162 Conn. 308, 312, 294 A.2d 312 (1972); *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221 (1971); where an argument to the jury is

supra, 348. We conclude that it was not. In doing so we have viewed the state's attorney's comments in the context of the entire trial and the instructions that guided the jury's deliberations. *State* v. *Kinsey,* supra, 348–49; *United States* v. *Klugman,* 506 F.2d 1378, 1381–82 (8th Cir. 1974); *United States* v. *Phillips,* 482 F.2d 191, 196 (8th Cir.), cert. denied, 414 U.S. 1114, 94 S. Ct. 846, 38 L. Ed. 2d 741 (1973).

We base this conclusion upon several factors. The testimony of Days, if offered and favorable to the defendant, would only have corroborated the defendant's whereabouts two hours before the time of the assault and no later.[11] While Days' testimony might have bolstered the defendant's credibility, it could not have been as crucial as the testimony that would have come from Barbara Upchurch had she been called. See *People* v. *Beller,* 54 Ill. App. 3d 1053, 1058, 370 N.E.2d 575 (1977). We also point out that the state's case against the defendant was a strong one; see *Brown* v. *United States,* 383 A.2d 1082, 1086 (D.C. 1978); *People* v. *Rodriguez,* 58 Ill. App. 3d 562, 570, 374 N.E.2d 904 (1978); *People* v. *Carelock,* 58 App. Div. 2d 996, 396 N.Y.S. 2d 941 (1977); cf. *Berger* v. *United States,* 295 U.S. 78, 84–89, 55 S. Ct. 629, 79 L. Ed. 1314 (1935); and that the defendant's alibi was weak and wholly uncorroborated. The reference to Stanley Days' absence at the trial was not repeated; cf. *People* v. *Mirenda,* 23 N.Y. 2d 439, 457, 245 N.E.2d 194 (1969); and the jury were not by the court's instructions permitted

improper and the court's attention is drawn to it, the court should take appropriate action to correct the impression created by the objectionable language where it is possible to do so. See, e.g., *State* v. *Benton,* 161 Conn. 404, 412–13, 288 A.2d 411 (1971).

[11] As noted above, the defendant testified that he left the victim's apartment at 6 a.m. with Stanley Days and Robert Days (apparently deceased at the time of trial) and that he went home.

to draw an adverse inference from Stanley Days' absence at the trial, there being no instruction on the matter. In fact, the court's instructions clearly placed upon the state the burden of proving each and every essential element of the crime and informed the jury that the defendant had the "right to sit back" and remain silent if he chose. The court's charge contributed to rendering any error harmless. See *United States* v. *Celcer,* 500 F.2d 345, 346–47 (5th Cir. 1974); *United States* v. *Atwell,* 71 F.R.D. 357, 359–60 (D. Del. 1976). Moreover, because the defendant chose to testify and any adverse inference that was suggested could have been rebutted by someone other than the defendant himself, the defendant's fifth amendment right to remain silent is not involved. Cf. *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). Finally, although the defendant moved for a mistrial, he failed to request that the improper language be stricken from the record and that a curative instruction be given. The defendant took no exception to the court's charge. Under all the circumstances, we conclude that the error was harmless. See *State* v. *Kinsey,* supra, 351; *Roberts* v. *State,* 243 Ga. 604, 255 S.E.2d 689 (1979).

The circumstances in which this claim of error arose leads us to conclude that, in the future, where counsel for either the state or the defendant intends to argue to the jury that an unfavorable inference be drawn from the absence of a witness at trial, an advance ruling from the trial court should be sought and obtained. At that time the trial court should determine whether the defendant's fifth amendment right not to testify would be violated by the proposed argument and whether there is sufficient evidence for the jury to find that the absent witness is

(1) available to the party against whom the inference is sought to operate[12] and (2) one whom that party would naturally be expected to produce. See *Fontaine* v. *Coyle,* 174 Conn. 204, 209–212, 384 A.2d 616 (1978). For jurisdictions with a similar requirement see *United States* v. *Blakemore,* 489 F.2d 193, 196 (6th Cir. 1973); *Gass* v. *United States,* 416 F.2d 767, 775–76 (D.C. Cir. 1969); *State* v. *Smith,* 238 N.W.2d 662, 668n. (N.D. 1976). If such an argument is to be permitted, an appropriate instruction should be given by the court, in which it defines for the jury the conditions under which the unfavorable inference may properly be drawn. See *Shea* v. *Tousignant,* 172 Conn. 54, 58–60, 372 A.2d 151 (1976). By such a requirement, the risk of vitiating an entire criminal trial because of an improper argument on this point can be avoided and the jury will be sufficiently informed to enable it to discharge its duty in this regard.

There is no error.

In this opinion the other judges concurred.

[12] For a discussion of the factors that bear upon a determination of availability see *State* v. *Bennett,* 171 Conn. 47, 55–58, 368 A.2d 184 (1976).