# STATE OF CONNECTICUT *v.* JUAN EASON
## (AC 30420)

Flynn, C. J., and Gruendel and Harper, Js.

Argued May 19—officially released August 25, 2009

*Richard W. Callahan,* special public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly* and *Gail P. Hardy*, state's attorneys, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Juan Eason, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a. On appeal, the defendant claims that the trial court improperly (1) assumed the role of advocate on behalf of the state and (2) failed to consider, sua sponte, whether certain photographs admitted into evidence should have been cropped to excise allegedly prejudicial images contained therein, as a matter of due process. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Robin Wilcox, were involved in a periodic relationship for approximately eight years. Throughout their relationship, the defendant lived at the victim's apartment in Waterbury along with two of the victim's children and her granddaughter. Upon learning of the defendant's affair with her sister, the victim ended her relationship with the defendant, and he moved out of the apartment.

Approximately three weeks later, the victim agreed to help the defendant move from Waterbury to Middletown. After meeting, they drove together in the victim's minivan to pick up the defendant's nephew, who also had agreed to help the defendant in his move. Unable to reach the nephew on his cellular telephone, the defendant and the victim parked in the vicinity of the nephew's home. While waiting, the defendant's affair with the victim's sister came up in conversation, and an argument ensued. At that moment, the defendant "just lost it" and strangled the victim to death.

Despite the defendant's belief that the victim was dead, he failed to notify anyone of her condition. Instead, the defendant moved the victim's body to the rear of the minivan, wrapped it in a blanket and placed T-shirts over the victim's face and feet. With the deceased victim in the back of the minivan, the defendant drove to the victim's apartment in search of a change of clothes, withdrew $500 from the victim's bank account, using her automatic teller machine card, and purchased a carton of cigarettes from a store and crack cocaine from someone on a street corner. The defendant then parked the minivan on a street where he believed that no one would discover the victim. Four days later, however, the police found the minivan with the victim's decomposing body inside. The defendant was apprehended that same day. A jury trial followed, at the conclusion of which the jury found the defendant guilty of murder, and the court rendered judgment accordingly. From that judgment, the defendant appeals.

I

The defendant first claims that the court improperly cast itself into the role of advocate on behalf of the state, thereby depriving him of his constitutional right to due process and a fair trial. Specifically, the defendant alleges that after the court determined that certain autopsy photographs lacked relevance for identification purposes, it improperly suggested that such evidence was relevant as to cause of death. Having failed to object to such matters at trial, the defendant claims that he is entitled to relief pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We disagree.

To prevail on his unpreserved constitutional claim, the defendant must satisfy all four conditions set forth in *Golding*. He must show that "(1) the record is adequate to review the alleged claim of error; (2) the claim

is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. Failure to satisfy any of the four conditions will cause the defendant's claim to fail. Id., 240. "The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id. Our analysis in the present case centers on *Golding*'s third prong.[1]

Before addressing the allegations made by the defendant, we "recite certain well established principles regarding the responsibilities of the trial judge in conducting a criminal trial." (Internal quotation marks omitted.) *State* v. *Harris*, 28 Conn. App. 474, 478, 612 A.2d 123, cert. denied, 223 Conn. 926, 614 A.2d 828 (1992). In particular, "[d]ue process requires that a criminal defendant be given a fair trial before an impartial judge and unprejudiced jury in an atmosphere of judicial calm." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 362, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). In a criminal trial, the judge is not simply a moderator of the proceedings. *State* v. *Pharr*, 44 Conn. App. 561, 568, 691 A.2d 1081 (1997). Rather, it is the responsibility of the judge to ensure that the trial is "conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *State* v. *Peloso*, 109 Conn. App. 477,

---

[1] Although we are not focusing attention on *Golding*'s second prong, we note that a trial court's improper advocacy on behalf of a party is generally an issue of constitutional magnitude. See *State* v. *Robertson*, 254 Conn. 739, 768–76, 760 A.2d 82 (2000).

489, 952 A.2d 825 (2008). In so doing, the function of the judge "is neither that of automaton nor advocate . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Fernandez*, 198 Conn. 1, 10, 501 A.2d 1195 (1985). The judge is not merely an "umpire in a forensic encounter"; (internal quotation marks omitted) *Cameron* v. *Cameron*, 187 Conn. 163, 169, 444 A.2d 915 (1982); but, rather, "a minister of justice . . . [who] should be cautious and circumspect in his language and conduct"; (citations omitted; internal quotation marks omitted) id.; in whatever he does.

The judge "should never assume a position of advocacy, real or apparent, in a case before [him or her], and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's." (Internal quotation marks omitted.) *State* v. *Pharr*, supra, 44 Conn. App. 570. Although the judge should not hesitate to intervene when matters warrant, he or she "should avoid trying the case for the lawyers." (Internal quotation marks omitted.) *State* v. *Fernandez*, supra, 198 Conn. 11; *State* v. *Peloso*, supra, 109 Conn. App. 492; see also *United States* v. *Marzano*, 149 F.2d 923, 926 (2d Cir. 1945) (Hand, J.) ("[p]rosecution and judgment are two quite separate functions in the administration of justice; they must not merge"). If the judge chooses to intervene in a criminal trial, such intervention must "reach a significant extent and be adverse to the defendant to a substantial degree" before risking impaired functioning of the finder of fact or the appearance of an impartial judge. (Internal quotation marks omitted.) *State* v. *Peloso*, supra, 491. The judge's intervention, however, may be necessary to bring out facts needed to resolve a doubt that he or she apparently had with regard to the admissibility of certain evidence. See *Hutchinson* v. *Plante*, 175 Conn. 1, 3, 392 A.2d 488 (1978).

In considering a judge's intervention, our Supreme Court has observed that "[t]he influence of the trial judge on the jury is necessarily and properly of great weight . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 462, 590 A.2d 112 (1991). The jury is ever watchful of the judge's words; *State* v. *Cox*, 50 Conn. App. 175, 182, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999); and has "a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended." (Internal quotation marks omitted.) *State* v. *Fernandez*, supra, 198 Conn. 12. It follows that "[t]he judge's attitude and the result he supposedly desires may be inferred by the jury from a look, a lifted eyebrow [or] an inflection of the voice . . . ." (Internal quotation marks omitted.) Id. For this reason, the judge must avoid taking a position of advocacy that "may bear the seeds of tilting the balance against the accused and place the judge in the eyes of some jurors, on the side of the prosecution." (Internal quotation marks omitted.) *State* v. *Delarosa*, 16 Conn. App. 18, 29, 547 A.2d 47 (1988).

In the present case, the jury was excused from the courtroom before the judge engaged in the colloquy that the defendant asserts crossed the line of impartiality as he considered the admissibility of certain autopsy photographs. Unless the jury was made aware of the colloquy between the judge and the parties during that time, it is factually impossible for the jury to have been prejudiced by actions of the trial judge to which it was not made witness. See *State* v. *Pharr*, supra, 44 Conn. App. 570–71 (noting jury may be improperly guided by actions of judge it observes); see also *State* v. *Fernandez*, supra, 198 Conn. 12 (same); cf. *State* v. *Peloso*, supra, 109 Conn. App. 493 (when judge and fact finder one and the same, any appearance of partiality in court's conduct carried less danger of prejudicing defendant than it would have in jury trial). There is no indication

that the jury was made aware of the actual events that transpired after it had been excused.

Even if we assume that the autopsy photographs were admitted into evidence as a result of improper judicial advocacy, their admission was harmless beyond a reasonable doubt. "Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis. . . . The inquiry for identifying harmless constitutional error is whether the error was harmless beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Peloso*, supra, 109 Conn. App. 493. As our Supreme Court has noted, "when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hoeplinger*, 206 Conn. 278, 295, 537 A.2d 1010 (1988). "The proper standard is whether any reasonable jury would have found the defendant guilty if the improperly admitted evidence had been excluded." Id., 296.

In the present case, there was overwhelming evidence of the defendant's guilt independent of the autopsy photographs. Specifically, the court received into evidence other autopsy photographs, some of which depicted both the victim's face and neck. Additionally, the court heard testimony from the physician who performed the autopsy concerning the victim's cause of death, injury and hemorrhaging within the neck. Finally, and perhaps most significantly, the court received into evidence the defendant's written confession in which he admitted to choking the victim until she lost consciousness. See *State* v. *Davis*, 109 Conn. App. 187, 198, 951 A.2d 31 (sufficiently corroborated confession generally constitutes overwhelming evidence rendering errors at trial harmless), cert. denied, 289 Conn. 929, 958 A.2d 160 (2008); *State* v. *Iban C.*, 275 Conn. 624, 645, 881 A.2d 1005 (2005) (same). Any

error, therefore, was harmless beyond a reasonable doubt.

## II

The defendant next argues that, upon his objection that certain autopsy photographs, including some depicting the victim's unclad body, were prejudicial and irrelevant, the court should have sua sponte considered whether these photographs could have been cropped to excise the allegedly inflammatory images contained therein. Specifically, the defendant asserts that the allegedly prejudicial and irrelevant portions of these photographs were not so inescapably bound with a prejudicial but relevant portion, the victim's neck, to prevent their redaction. Having failed to present this argument to the trial court, the defendant claims that he is entitled to relief under *Golding*.[2] Again, we disagree.

It is well established that "a trial court has broad discretion in weighing the potential prejudicial effect of a photograph against its probative value." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 575, 710 A.2d 1348 (1998). As such, "[a] potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury." (Internal quotation marks omitted.) Id. It also is well established that "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue

---

[2] In addition, the defendant asks us to exercise our supervisory powers over this claim. "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 762 n.28, 859 A.2d 907 (2004). We decline the defendant's invitation.

is involved." (Internal quotation marks omitted.) *State* v. *Walker*, 215 Conn. 1, 5, 574 A.2d 188 (1990); see *State* v. *Periere*, 186 Conn. 599, 611, 442 A.2d 1345 (1982). Our Supreme Court repeatedly has held that "a nonconstitutional claim cannot be transformed into a constitutional claim simply by virtue of the label placed upon it by a party." (Internal quotation marks omitted.) *State* v. *King*, 249 Conn. 645, 680 n.39, 735 A.2d 267 (1999); see *State* v. *Taylor*, 239 Conn. 481, 502–503, 687 A.2d 489 (1996) ("it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party" [internal quotation marks omitted]), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). Accordingly, "evidentiary claims are not of constitutional magnitude and . . . thus fail under *Golding*'s second prong." *State* v. *Spiegelmann*, 81 Conn. App. 441, 447, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004).

We take particular note of the defendant's failure to present any authority from any jurisdiction, state or federal, in support of his claim. See *State* v. *Vilalastra*, 207 Conn. 35, 46–47, 540 A.2d 42 (1988) ("[t]he defendant has failed to cite a single case from any jurisdiction in which a court has held that the erroneous admission of expert testimony concerning an ultimate fact implicates fundamental fairness or constitutes the violation of a specific constitutional right"). Instead, he contends that because advances in computer technology allow for cropping with little effort or cost, the court should have, on its own initiative, determined that such photographs should have been cropped. According to the defendant, it follows that the court's failure to do so violated his constitutional right to due process. It is clear, however, that the defendant "has put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Walker*,

supra, 215 Conn. 5. It was entirely within the court's broad discretion to admit the photographs into evidence. *State* v. *Satchwell*, supra, 244 Conn. 575. Despite being made aware of the allegedly prejudicial and irrelevant images contained within the photographs through the defendant's objection, the court determined that the probative value of the photographs outweighed any prejudicial effect they might have carried. In making this determination, the court was not required to consider whether such allegedly inflammatory images could have been removed from the photographs. We refuse to place such an obligation on the courts. The defendant's claim is not of constitutional magnitude and fails under *Golding*'s second prong.

The judgment is affirmed.

In this opinion the other judges concurred.