******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RUFFINO FERNANDEZ
(AC 38088)

DiPentima, C. J., and Keller and West, Js.

*Argued October 25—officially released December 27, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Kwak, J.)

*Richard S. Cramer*, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *John F. Fahey*, senior assistant state's attor-
ney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Ruffino Fernandez, appeals following his conviction of one count each of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (B). The defendant claims that (1) the trial court abused its discretion by not permitting him to make a missing witness argument during closing remarks; (2) the state committed prosecutorial impropriety by basing part of its closing argument on facts not in evidence; and (3) he was deprived of his rights to an impartial tribunal and a fair trial when the trial court made comments in front of the jury that bolstered the credibility of the victim. We disagree with the defendant and affirm the judgment of conviction.

The jury could reasonably have found the following facts. During the relevant time period, the defendant owned and operated Keithbel Market, a grocery store on Zion Street in Hartford. Nearby lived J,[1] then twelve to thirteen years old, along with her family. A family friend, Wilnelia "Wendy" David, also lived with J's family for a period of time, and, thereafter, in another apartment in the same building.

Prior to the events in question, David developed an arrangement with the defendant whereby she had sex with him in the basement of the market in exchange for cash or diapers for her son. Between September and December, 2012, David brought J along with her during visits to the market. On approximately four of these occasions, the defendant brought J down to the basement of the market and sexually assaulted her. David observed at least one of these assaults. During some or all of these incidents, the defendant touched and kissed J's breasts under her clothes; touched her buttocks over her clothes; and digitally penetrated her vagina. After at least some of these incidents, the defendant gave J money.

David was charged as an accessory to risk of injury to a child in violation of § 53-21 (a) (2). In exchange for a sentence of five years in prison and five years of special parole (the maximum time to which she was exposed was twenty years), David testified against the defendant.

After a four day trial, the jury convicted the defendant of the three counts set forth previously. The court, *Kwak, J.*, sentenced the defendant to a total effective sentence of forty years to serve, followed by five years of special parole, and registration for life as a sex offender. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its

discretion by not permitting him to make a missing witness argument during his closing remarks. We are not persuaded.

The following additional facts are relevant to our discussion. At trial, David testified that on one occasion she "lost track" of J during one of their visits to the defendant's store. At the time, David was joined by J's sister. David and J's sister called out for J in an attempt to locate her. David and J's sister eventually observed J, followed by the defendant, coming up the basement staircase of the market.

The defendant requested leave from the court to make a missing witness argument during closing remarks. See *State* v. *Mungroo*, 104 Conn. App. 668, 677, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008). Specifically, the defendant wished to argue that the state's failure to call J's sister to testify in corroboration of David's testimony that both observed J and the defendant ascending the basement staircase suggested that J's sister's testimony would be detrimental to the state's case. The defendant argued that because David had, in the defendant's words, "credibility issues," it would have been natural for the state to call J's sister to bolster David's testimony. Thus, according to the defendant, he should have been permitted to ask the jury to draw an adverse inference from the absence of such testimony. The court denied the defendant's request, reasoning that the defendant's offer of proof was mere speculation.

The following legal principles govern our resolution of this claim. "We review the court's decision allowing the [defendant] to include a missing witness argument in [his] closing argument for abuse of discretion. . . . It is within the discretion of the trial court to limit the scope of final argument. . . . The broad discretion vested in trial courts by [*State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (setting forth requirements for making missing witness argument), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000)] mirrors the general standards regarding the trial court's ability to limit closing argument. [T]he scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . We first determine whether the trial court abused its discretion in light of the information before the court when it ruled on the motion. If there was such an abuse of discretion, the reviewing court must determine whether the defendant has established that, in light of the totality of evidence at trial and the trial court's subsequent instructions to the jury, the impropriety constituted harmful error." (Internal quotation marks omitted.) *State* v. *Campbell*, 149 Conn. App. 405, 419, 88 A.3d 1258, cert. denied, 312 Conn. 907, 93 A.3d 157 (2014).

"Under the sixth and fourteenth amendments to the

United States constitution, a criminal defendant has a constitutionally protected right to make a closing argument. That right is violated not only when a defendant is completely denied an opportunity to argue before the court or the jury after all the evidence has been admitted, but also when a defendant is deprived of the opportunity to raise a significant issue that is reasonably inferable from the facts in evidence. . . .

"In [*State* v. *Malave*, supra, 250 Conn. 739], our Supreme Court abandoned, in criminal cases, the [rule of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960)], also known as the missing witness rule, which sanctioned, under certain circumstances, a jury instruction that an adverse inference may be drawn from the failure of a party to produce a witness. Although our Supreme Court abandoned the *Secondino* rule, it did not intend to prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case. . . . Comments in closing argument that do not directly exhort the jury to draw an adverse inference by virtue of the witness' absence do not necessarily fall under the ambit of *Secondino* . . . and accordingly are not forbidden by *Malave*. Our Supreme Court further provided that [o]f course, the trial court retains wide latitude to permit or preclude such a comment, and may, in its discretion, allow a party to adduce additional evidence relative to the missing witness issue. . . .

"It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matters that might prejudice its deliberations. . . . While we are sensitive to the discretion of the trial court in limiting argument to the actual issues of the case, tight control over argument is undesirable when counsel is precluded from raising a significant issue. . . .

"A missing witness argument is appropriate in limited circumstances. Counsel may only invite the jury to draw reasonable inferences on the basis of facts in evidence, and the court's exercise of discretion as to whether to permit such argument is dependent on the facts made known to it. For this reason, it is necessary for counsel, through facts and argument, to justify a request to make a missing witness argument. Our decisional law reflects, for example, that defense counsel should explain how the state's decision not to call [a person as a witness] exposed a weakness in the state's case and should make an offer of proof regarding the substance of [such person's] potential testimony. . . . Stated otherwise, *counsel must demonstrate that such witness was avail-*

*able to testify, set forth the substance of the testimony that such witness would have given had he been called to the witness stand and explain how his testimony would have been detrimental to the state's case.* Evidence that would have been merely cumulative or of no consequence to a reasonable assessment of the state's case, for example, would not warrant such an argument." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Mungroo*, supra, 104 Conn. App. 675–77.

The defendant argues on appeal that the court abused its discretion by precluding his missing witness argument because he established at trial that J's sister was available to testify, and that he sufficiently articulated the substance of such testimony and how it would have been detrimental to the state's case. See id., 677. We disagree for the reasons set forth below.

As to J's sister's availability as a witness, the defendant argued before the trial court that "the law as it stands suggests that she was apparently available to both sides, and I could have called her if I wished to raise this point." In denying the defendant's request to make the missing witness argument, the court did not specifically address the issue of J's sister's availability. On appeal, the defendant points to the fact that "[J's sister] was still a teenager at the time of trial and lived in the same apartment building as her mother, who testified, and as [J]." The defendant continues: "As a family member, there should be little doubt that the state either knew or could have readily found this witness through the cooperation of [J], her brother, also a witness, or [J's] mother or father who also testified. Defendant, in order to secure his right to make the argument, need not show that he himself knows exactly where this witness was at the time of trial. The state allegedly did not know. But there was no question it could have readily found that out."

We emphasize that, in order to succeed on a request to make a missing witness argument, "it is necessary for counsel, *through facts and argument*, to justify [such] request . . . ." (Emphasis added.) *State* v. *Mungroo*, supra, 104 Conn. App. 677. We conclude that the defendant's offer of proof at trial did not sufficiently establish that J's sister was available to testify. The defendant presented nothing to the trial court concerning the availability of J's sister other than a conclusory statement that she was available and that the defendant "could have called her if I wished to raise this point." The defendant points now to evidence of J's sister's living arrangements at the time of the assaults to suggest that the state could have obtained her testimony without difficulty, but that is simply not the argument that the defendant made before the trial court.[2] In light of such dearth of information, we reject the defendant's argument that his offer of proof adequately demon-

strated that J's sister was available to testify.

We are likewise not persuaded that the defendant adequately set forth the substance of J's sister's testimony and how it would have been detrimental to the state's case. As previously explained, the defendant's argument to the court appears to have proceeded as follows: David, it is claimed, had serious credibility problems as a witness; therefore, the state needed to bolster her credibility by presenting J's sister as a corroborating witness; consequently, the fact that the state did not present J's sister's testimony suggests that such testimony would have harmed the state's case. The defendant, as he must, argues much the same upon appeal. See *Janusauskas* v. *Fichman*, 264 Conn. 796, 807, 826 A.2d 1066 (2003) ("a party may not try its case on one theory and appeal on another" [internal quotation marks omitted]).

The court did not abuse its discretion by precluding the defendant's missing witness argument on the ground that his offer of proof was based on mere speculation. Aside from hypothesizing that J's sister's testimony would not be "helpful" to the state, the defendant provided no actual information as to the expected content of the testimony or its prejudicial impact on the state's case. "Where, as here, a defendant's claimed entitlement to make a missing witness argument rests on mere speculation, the court's exercise of discretion in denying permission to make such argument does not reflect an abuse of its discretion." *State* v. *Mungroo*, supra, 104 Conn. App. 678–79; see also *State* v. *Graham*, 67 Conn. App. 45, 49, 787 A.2d 11 (2001) (trial court did not abuse discretion in precluding missing witness argument because defendant "offered only a blanket statement that [the witness'] failure to testify demonstrated a weakness in the state's case"), cert. denied, 259 Conn. 911, 789 A.2d 996 (2002).

Put simply, the defendant's argument that the state's failure to put forth the testimony of J's sister suggests that such testimony would have been harmful to the state's case does not appear to us to be a "reasonable inference" based on the record. See *State* v. *Mungroo*, supra, 104 Conn. App. 677 ("[c]ounsel may only invite the jury to draw reasonable inferences on the basis of facts in evidence"). We conclude so for two reasons. First, contrary to the defendant's contention, we do not view David's testimony as particularly in need of corroboration. The defendant asserts that David "testified with considerable baggage" and that "[h]er testimony was replete with inconsistencies and admitted discrepancies." The defendant, however, did not identify any alleged inconsistency or discrepancy at trial, nor does he do so on appeal. The defendant does point to the fact that David testified against the defendant in exchange for a more lenient sentence as damaging to her credibility. He elides the fact, however, that were

David to lie during her testimony, pursuant to her plea agreement with the state, she would have faced up to twenty years in prison. The existence of the plea agreement alone does not appear to us to warrant concluding that the testimony of J's sister would have been harmful to the state's case.

Second, we do not see the particular import of casting doubt on the event that David described—namely, that she and J's sister observed J and the defendant ascending the market's basement staircase. In other words, such event was simply not so central to the state's case that a failure to call J's sister to corroborate it suggests that her testimony would have been harmful to the state. For one, David's testimony about the staircase scene did not describe any sexual acts by the defendant. Additionally, David recounted an entirely separate incident during which she observed the defendant licking J's breasts. There is no indication that J's sister was present during that event. Finally, J testified that the defendant assaulted her approximately four times in the basement of the market, further suggesting that discrediting David's testimony about the staircase scene (which, again, did not describe any sexual contact) would not have cut to the heart of the state's case. In light of the foregoing, we fail to see how the defendant's argument that J's sister's testimony would have been harmful to the state's case is a "reasonable inference" based on the record. Accordingly, we conclude that the trial court did not abuse its discretion in precluding such argument.[3]

## II

The defendant next claims that the state committed prosecutorial impropriety by basing part of its closing argument on facts not in evidence. We find no error with respect to this claim.

The following additional facts are relevant to our discussion. As previously noted, the defendant was charged with and convicted of, inter alia, one count of risk of injury to a child in violation of § 53-21 (a) (2). Section 53-21 (a) provides, in relevant part: "Any person who . . . (2) has contact with the intimate parts . . . of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the *health or morals* of such child . . . shall be guilty of . . . (C) a class B felony . . . ." (Emphasis added.)

At trial, the state called as an expert witness Audrey Courtney, a pediatric nurse practitioner at Saint Francis Hospital. Courtney testified that she had performed child abuse evaluations since 1990 and had examined child abuse victims who reported digital penetration. Courtney further testified that she had observed sexually transmitted diseases among children who had

reported solely digital penetration.

During closing remarks, the state, in arguing for conviction under § 53-21 (a) (2), stated: "[T]he last element of [§ 53-21 (a) (2)] is that it's likely to impair the health or morals of a child. . . . Morals, that's for you to decide in the more general sense of a fifty-something year old man doing this to a thirteen year old child.

"But with respect to health, I would say you had actually some more specific information, which [was] Audrey Courtney coming in and talking about the idea that even through digital penetration there is a likelihood—she has seen cases where there's been a disclosure of simply digital penetration which resulted in gonorrhea, HIV, herpes, the like, sexually transmitted diseases among children. Again, the state doesn't have to show she has any of those diseases, just that the actions of the defendant are such that the impairment of health would be likely based on his actions."

The defendant argues that the state committed prosecutorial impropriety because Courtney's testimony did not support the state's contention that digital penetration by itself would likely result in the transmission of sexually transmitted diseases. According to the defendant, "Courtney's testimony did not state there was a likelihood nor even implied it nor was there any basis for the jury to infer it. All the jury knew was that of the thousands of cases, some of the children had sexually transmitted diseases." We conclude that the state's comment did not deprive the defendant of a fair trial.

As a preliminary matter, we note that the defendant did not object to the preceding statements at trial. "It is well established law, however, that a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. . . . Our Supreme Court has explained that the defendant's failure to object at trial to . . . the [occurrence] that he now raises as [an instance] of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his [claim]. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Citations omitted; internal quotation marks omitted.) *State* v. *Maner*, 147 Conn. App. 761, 782, 83 A.3d 1182, cert. denied, 311 Conn. 936, 88 A.3d 550 (2014).

The following legal principles concerning prosecu-

torial impropriety govern our resolution of this claim. "Our jurisprudence concerning prosecutorial impropriety during closing argument is well established. [I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . . [O]ur determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial. . . . These factors include the extent to which the [impropriety] was invited by defense conduct or argument, the severity of the [impropriety], the frequency of the [impropriety], the centrality of the [impropriety] to the critical issues in the case, the strength of the curative measures adopted, and the strength of the state's case. . . .

"A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence. . . . Moreover, when a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Carrasquillo*, 290 Conn. 209, 222, 962 A.2d 772 (2009).

Assuming, without deciding, that the state's mention of the "likelihood" of contracting sexually transmitted diseases through digital penetration constituted prosecutorial impropriety, we conclude that the comment did not deprive the defendant of his right to a fair trial. The *Williams* factors guide our decision. See id. While the comment was not invited by defense counsel or argument, we find that the rest of the factors weigh in the state's favor. The severity of the comment was minimal—the state immediately corrected itself by stating that Courtney had merely *observed* cases in which child victims reporting solely digital penetration also suffered from sexually transmitted diseases. The frequency of the remark—it occurred once—was also minimal.

The remark was not critical to the state's case because the jury could have found the defendant guilty under § 53-21 (a) (2) on the alternative ground that his actions were likely to impair J's *morals*. See *State* v. *Romero*, 269 Conn. 481, 493, 849 A.2d 760 (2004) ("[o]nce the jury determined that . . . intercourse and

mutual sexual touching took place . . . it is difficult to imagine a finding that this conduct could *not* be deemed likely—in the context of probably—to impair [the nine year old victim's] morals" [emphasis in original]). In its closing remarks, the state explicitly argued for a guilty verdict based on the impairment of morals prong of § 53-21 (a) (2). The court instructed the jury as to this prong as well. "The jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992).

As to curative measures taken by the court, while the court did not provide a curative instruction specifically in response to the state's comment because the defendant did not object to the remark at trial, the court instructed the jury that the statements and arguments of the attorneys were not evidence, and that "[i]f the facts as you remember them differ from the way the lawyers have stated them[,] your memory of them controls."

Finally, as to the strength of the state's case, we conclude that it was "sufficiently strong so as to not be overshadowed by the [state's comment]." *State* v. *Angel T.*, 292 Conn. 262, 293, 973 A.2d 1207 (2009). While the state's case as to the impairment of health prong of § 53-21 (a) (2) appears to us not to be particularly strong,[4] as previously explained, the jury could have found the defendant guilty under the statute on the alternative ground that his abuse of J was likely to impair her morals. Although the defendant argues that the jury could not have convicted him under the impairment of morals prong because the state's argument and the trial court's instructions as to that prong were, for various reasons, inadequate,[5] we find that not to be the case. Again, in closing argument, the state argued for conviction under both the health and morals prongs of § 53-21 (a) (2), and the judge instructed the jury as to both bases of liability as well. As to the evidence presented by the state, the jury heard the testimony of two eyewitnesses—J and David—who attested to the sexual abuse. J's father and brother testified as constancy of accusation witnesses. Three police officers who investigated the case also testified for the state. One officer testified that J accurately identified the defendant and David in photographic arrays. The officer also testified as to the defendant's statements and behavior during an interview the officer conducted during the investigation. According to the officer, although the defendant denied the allegations against him in the interview, he indicated that he had brought adult women down to the store's basement for sex. When the officer showed the defendant a picture of David, the officer observed the defendant's hand tremble. Another officer testified that, during his investigation of the allegations, he took photographs of the market, including

of the market's basement. Those photographs were entered as trial exhibits. Certain photographs bore similarities to a picture J drew of the basement during an interview at Saint Francis Hospital about the allegations. In light of such evidence, the defendant himself acknowledged in his appellate brief that "the jury had sufficient evidence from which it could have found that the defendant's actions were likely to impair the child's morals . . . ." The state's case for the impairment of morals under § 53-21 (a) (2)—sexual contact with a twelve to thirteen year old and paying her money afterwards—was strong enough to withstand the alleged impropriety. For the foregoing reasons, the *Williams* factors are unavailing to the defendant. Accordingly, the defendant cannot prevail on his claim of prosecutorial impropriety.

## III

Finally, the defendant claims that he was deprived of his rights to an impartial tribunal and a fair trial when the trial court made comments in front of the jury that bolstered the credibility of the victim. We do not agree.

The following additional facts are relevant to our discussion. The state called J as a witness during the trial. When the state asked J where on her body the defendant had touched her, J was unwilling or unable to respond verbally, and was instead allowed to write certain anatomical terms on a piece of paper. When J failed to respond verbally to one such question, the trial court told J, "Take your time; I know this is difficult" and "You don't have to be nervous." Later in J's testimony, the court again told her, "I know it's difficult for you" and "I know this was very difficult."[6] All of these statements were made in front of the jury. The defendant did not object to them during the trial. He argues on appeal that these statements deprived him of a fair trial and impartial tribunal because they bolstered J's credibility. According to the defendant, the court's comments conveyed to the jury that it believed J's allegations because the only reason it would be "difficult" for her to testify was if the allegations were true. "[I]n showing compassion to a witness and empathizing with the great difficulty which she had in testifying about her ordeal," the defendant argues, "[the court] blatantly enhanced her credibility in the minds of the jury." As the defendant did not object to the court's statements at trial, he pursues relief under *State* v. *Golding*, supra, 213 Conn. 233. We do not find the defendant's argument persuasive.

"To prevail on his unpreserved constitutional claim, the defendant must satisfy all four conditions set forth in *Golding*. He must show that (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional viola-

tion . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . Failure to satisfy any of the four conditions will cause the defendant's claim to fail. . . . The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Eason*, 116 Conn. App. 601, 603–604, 976 A.2d 797, cert. denied, 294 Conn. 902, 982 A.2d 646 (2009); see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*). In the present case, we conclude that the record is adequate to review the claim and that the claim is of constitutional magnitude alleging violation of a fundamental right. We therefore proceed to *Golding*'s third prong.

The following legal principles pertaining to the judge's role in conducting a criminal trial guide our analysis. "While no precise theorem can be laid down, we have held that it is proper for a trial court to . . . [intervene] where the witness is embarrassed, has a language problem or may not understand a question." (Internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 652, 881 A.2d 1005 (2005); see also *State* v. *Graham*, 21 Conn. App. 688, 692–93, 575 A.2d 1057 ("[a] trial court has a discretionary right to intervene in the examination of witnesses where such intervention is necessary to clarify confusing testimony, restrain an obstreperous witness, or elucidate a witness' understanding of a question"), cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990). "If the judge chooses to intervene in a criminal trial, such intervention must reach a *significant extent* and be adverse to the defendant to a *substantial degree* before risking impaired functioning of the finder of fact or the appearance of an impartial judge." (Emphasis added; internal quotation marks omitted.) *State* v. *Eason*, supra, 116 Conn. App. 605.

While there are perhaps more neutral ways of obtaining cooperation from a reluctant witness whose testimony is key to the case than stating "I know this is difficult" and "You don't have to be nervous" in the presence of the jury, we cannot say that such statements were so significant, and the harm to the defendant so substantial, as to deprive the defendant of a fair trial and an impartial tribunal. In our view, the court's statements did not imply that the court found J a credible witness or that the defendant had done anything wrong, but were, rather, an attempt by the court to elicit testimony from a young witness who was noticeably nervous while testifying. Moreover, in its instructions to the jury, the court cured any potential misapprehensions by stating that "[y]ou should not be influenced by my actions during the trial . . . in questions to witnesses . . . . You are not to take my actions as any indication

of my opinion as to how you should determine the issues of fact." As previously explained, "[t]he jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Negron*, supra, 221 Conn. 331. Consequently, we conclude that these comments did not deprive the defendant of his rights to a fair trial and an impartial tribunal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] For this reason we also reject the defendant's analogy to *State* v. *Daniels*, 180 Conn. 101, 429 A.2d 813 (1980). In *Daniels*, the defendant objected to the state's missing witness argument on the ground that the availability of the witness was not established. Id., 107. On trial for sexual assault, the defendant in *Daniels* testified in his own defense that he was asleep in bed with another woman at the time the assault was alleged to have occurred. Id. During cross-examination of the defendant, the state asked if he knew where this purported alibi witness was. Id., 110. The defendant responded, "She's home, I guess." (Internal quotation marks omitted.) Id. Our Supreme Court concluded that such testimony was sufficient to support a finding by the jury that the missing witness was available to testify. Id. The defendant in the present appeal argues that *Daniels* establishes that "the party seeking permission to make the missing witness argument need not show certainty of the availability of the witness when a family is involved." In the present case, the defendant not only failed to show, in his words, "certainty" that J's sister was available to testify, but failed to provide any factual basis at all in support of such conclusion. *Daniels*, therefore, is unavailing to the defendant.

[3] We briefly dispose of two ancillary arguments made by the defendant:

The defendant first argues that "[t]he state's claim that [J's] sister would be cumulative to the testimony of [David] is simply no basis for the court to have denied the motion." The premise of this argument is belied by the record. The trial court did not deny the defendant's request because it concluded that J's sister's testimony would be cumulative. Rather, the court denied the request because the defendant's offer of proof was speculative. The defendant's reliance on *State* v. *Saunders*, 114 Conn. App. 493, 969 A.2d 868, cert. denied, 292 Conn. 917, 973 A.2d 1277 (2009), is misplaced. In *Saunders*, this court declined to review the merits of the defendant's missing witness argument claim, concluding that it was unpreserved. Id., 504. We decline to revisit *Saunders* here.

Second, the defendant argues that J's sister's testimony was critical to the state's case, and therefore merited a missing witness argument, because there was evidence adduced at trial that, during a police interview with the defendant prior to trial, the defendant explicitly denied that any minors had been in the market's basement. The defendant argues in part: "It would appear . . . that the only witness who could . . . partially refute the defendant's exculpatory statement was [J's] sister." This argument fails for two reasons. First, the defendant did not make this particular argument before the trial court. Second, the defendant's interview statement is a peripheral matter. The defendant was not charged and convicted for merely bringing J down to the basement, but for sexually assaulting her there. It therefore does not appear to us to have been critical to corroborate David's testimony that she and J's sister observed J and the defendant ascending the market's basement staircase.

[4] Nothing from Courtney's testimony suggests to us that contraction of a sexually transmitted disease is a *likely* consequence of child sexual assault by means of digital penetration. At most, the testimony conveyed that a subset of children—whether it is 1 percent or 99 percent is unclear—reporting abuse solely in the form of digital penetration whom Courtney observed also suffered from a sexually transmitted disease.

[5] The defendant argues that the state's comment on the likelihood of contracting sexually transmitted diseases by means of digital penetration so dominated the state's closing argument that the jury could have convicted

the defendant under § 53-21 (a) (2) only on the basis of the impairment of J's health. The defendant also claims that the court's instructions to the jury were insufficient to apprise them of the impairment of morals prong of § 53-21 (a) (2). The defendant further contends that the court's instructions to the jury that they were "the sole judges of the facts" were insufficient because they did not convey that "statements by the prosecutor as to his *recollection* of the facts was not to be relied on." (Emphasis added.) For the reasons previously set forth in this opinion, we conclude that these arguments lack merit.

  [6] The defendant asserts in his appellate brief that the trial court also told J that it "understood why she was 'nervous and *distressed*' . . . ." (Emphasis added.) Although, as noted previously in this opinion, the trial court did tell J, "You don't have to be nervous," our review of the trial transcripts does not disclose, and the defendant has not identified through citation to the transcripts, an instance in which the court used the word "distressed" in this context.

_____